CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED
September 08, 2026
LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ROANOKE DIVISION**

| | | |
|---|---|---|
| **AARON R. COLLINS,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:25CV00938 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **COLONEL RICK ALSBROOK, et al.,** | ) | JUDGE JAMES P. JONES |
| | ) | |
| Defendants. | ) | |

*Aaron R. Collins, Pro Se Plaintiff.*

The plaintiff, an inmate proceeding pro se, filed this action under 42 U.S.C. § 1983, alleging that jail officials violated his religious rights under the Constitution and the Religious Land Use and Institutionalized Persons Act (RLUIPA). Collins has also filed a Motion for Issuance of Subpoenas. Upon review, I conclude that some of the claims must be summarily dismissed, the motion must be denied, and the Clerk shall attempt to serve the defendants.

I. Collins's Complaint.

During relevant times, Collins was housed in the Southwest Virginia Regional Jail Authority's Duffield Facility. Collins states that he is a Sunni Muslim and contends that the defendants have violated his religious liberties. Specifically, he claims that he has been denied a request for "a sealed religious meal/Kosher diet," which is "Halal compliant with [his religion]" and that, as a result, he is "not eating

well because eating the food is Haram, and Muslims are not supposed to eat meat that is not Halal compliant." Compl. 5, 6, Dkt. No. 1. He further states that he has been denied or has otherwise not received a Kufi, a Prayer Rug, Prayer Oils, a Qur'an, other unspecified Sunni Muslim religious materials, nor the opportunity to participate in "Jum'ah every Friday." *Id.* at 5. When he has asked officials for these religious accommodations, Collins claims they gave him "the run around" by advising him to submit requests to different departments. *Id.* In response to one request, he alleges that he "was told to write out to property and ask for a towel to pray on." *Id.* at 6. According to Collins, these responses have affected his mental health, "making [him] depressed," and "feel disrespected." *Id.* Under these facts, Collins claims that the defendants have violated his rights under the Free Exercise and Establishment Clauses of the First Amendment, the Spending Clause, RLUIPA, the Eighth Amendment, and the Fourteenth Amendment.

Collins has named as defendants Colonel Rick Alsbrook, the facility's superintendent; Major Todd Tatum, the facility's jail administrator; Lt. Montgomery, the facility's administrative lieutenant; and Chaplain Ron Adams, the facility's religious leader. Collins has sued each of these defendants in both their individual and official capacities.

Collins seeks monetary damages and injunctive relief. As injunctive relief, he requests to receive a Kufi, a Prayer Rug, Prayer Oils, a Quran, participation in Jumah

every Friday, to be placed on the Ramadan list, sealed religious meals, and any other Muslim materials that the court may grant.

## II. Discussion.

### A. Standard of Review.

Under 28 U.S.C. § 1915A, upon review of a civil action initiated by an inmate, I may "identify cognizable claims or dismiss the complaint, or any portion of the complaint" should I determine that the complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b)(1). A complaint must plead facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facially plausible claim includes factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### B. Relief Available.

At the outset, it's important to discuss the remedies available under the claims Collins has set forth. First, Collins is not entitled to monetary damages against the defendant jail officials in their official capacities under § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Thus, only claims for monetary damages against the defendants in their individual capacities will be considered in this regard.

On the other hand, under RLUIPA, Collins has no claim for monetary damages against officials in their individual capacities. *Landor v. La. Dep't of Corr. & Pub. Safety*, 146 S. Ct. 1931 (2026); *Rendelman v. Rouse*, 569 F.3d 182, 189 (4th Cir.2009). And the Eleventh Amendment bars a recovery of damages under RLUIPA against officials sued in their official capacities. *Madison v. Virginia*, 474 F.3d 118, 133 (4th Cir. 2006). Thus, because damages are not an authorized form of relief under RLUIPA, Collins's "only potential remedies under RLUIPA are equitable." *Wall v. Wade*, 741 F.3d 492, 496 n.5 (4th Cir. 2014). Furthermore, official capacity claims under RLUIPA only lie against the official or officials "who issued the challenged policy." *Lovelace v. Lee*, 472 F.3d 174, 193 (4th Cir. 2006).

Therefore, considering these principles, only claims for monetary damages against the defendants in their individual capacities will go forward under § 1983, and only claims for injunctive relief against the official or officials who issued the religious policies or practices challenged will go forward under RLUIPA.

B. Constitutional Claims under § 1983.

Section 1983 permits an aggrieved party to file a civil action against a person for actions taken under color of state law that violated his constitutional rights. *Cooper v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013). Collins submitted his Complaint on a § 1983 form, which requires that he state which of his rights have been violated. In response to that prompt, Collins lists the Free Exercise and

Establishment Clauses of the First Amendment, the Spending Clause, RLUIPA, the Eighth Amendment, and the Fourteenth Amendment. Compl. 5, Dkt. No. 1. Although Collins lists several constitutional provisions in which he claims the defendants have violated, he has not presented factual allegations in support of all of them.

While Collins contends that his Eighth Amendment rights have been violated, he offers no facts to support a claim under that provision of the Constitution. Even if he is attempting to assert that he was subjected to cruel and unusual punishments based on the officials' responses, such a claim cannot survive. He states that unspecified officials told him to "ask for a towel to pray on," which "was basically spitting on [his] religion." Compl. 6, Dkt. No. 1. But mere "verbal abuse by prison officials, without more, [does] not state a cognizable claim under § 1983." *Henslee v. Lewis*, 153 F.App'x 178, 180 (4th Cir. 2005) (unpublished).

Additionally, to the extent that Collins is attempting to assert an equal protection claim under the Fourteenth Amendment, he has offered no facts showing that he has been treated differently than any other similarly situated inmate or that any unequal treatment was the result of intentional or purposeful discrimination. *See Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001) (explaining that "[t]o succeed on an equal protection claim, a plaintiff must first demonstrate that he has

been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination").

Still, Collins has not explained how each individual defendant was personally involved in these alleged constitutional deprivations for liability to be imposed. *See Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017) ("[L]iability will only lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights.") (quoting *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)). Furthermore, should Collins be suing certain defendants under § 1983 based simply on their official titles and supervisory roles within the jail, "vicarious liability is inapplicable to . . . § 1983 suits" therefore, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The only individual Collins somewhat identifies is "the Chaplain," who I assume is defendant Adams. Compl. 5, Dkt. No. 1. Regarding the Chaplain, Collins claims that he "tried and tried to get a Qur'an from the Chaplain," but that he cannot obtain one because he is indigent and they cost $18 in the commissary. *Id.* That said, as explained in more detail below, Collins has not adequately claimed that his exercise of religion has been substantially burdened where he has only described a financial difficulty to obtaining religious items from the commissary. *See Garrett v. Gullett*, No. 7:24-cv-407, 2025 WL 2627433, at *3 (W.D. Va. Sept. 11, 2025)

(determining that an inmate's religious practice was not substantially burdened under the Free Exercise Clause where the "official action merely makes the religious exercise more expensive or difficult, but does not pressure the adherent to violate his or her religious beliefs or abandon one of the precepts of his or her religion").

Ultimately, because Collins's factual allegations sound in religious liberty violations, only the claims that fall under those constitutional or statutory provisions will be considered.

B. Religious Rights Claims.

The Free Exercise Clause of the First Amendment to the United States Constitution "requires prison officials to reasonably accommodate an inmate's exercise of sincerely held religious beliefs." *Greenhill v. Clarke*, 944 F.3d 243, 253 (4th Cir. 2019). To determine whether a facility's regulation unreasonably violates an inmate's Free Exercise rights, the inmate must establish that he holds a sincere religious belief and that the facility's practice or policy places a substantial burden on his ability to practice his religion. *Wilcox v. Brown*, 877 F.3d 161, 168 (4th Cir. 2017). Once the plaintiff makes this "threshold" showing, the burden shifts to the defendants to "offer[] penological interests that justify its infringement on free exercise rights." *Id.* Then, "if the prison adequately alleges a penological interest, a plaintiff can still prevail if the policy is not reasonably related to that interest." *Id.*

It's not until that point in the analysis that the factors outlined in *Turner v. Safley*, 482 U.S. 78, 89–90 (1987) are examined.[1] *Id.*

Similarly, RLUIPA prohibits governmental entities from "impos[ing] a substantial burden on the religious exercise" of an inmate. *Id.* at 249 citing 42 U.S.C. § 2000cc-1(a). While an inmate asserting religious liberty claims may use both First Amendment and RLUIPA mechanisms, "the RLUIPA arrow flies farther and strikes harder." *Roberts v. Engelke*, 180 F.4th 634, 638 (4th Cir. 2026). Under RLUIPA, "the inmate bears the initial burden of establishing that a prison policy substantially burdens his or her ability to practice in accordance with a sincerely held religious belief." *Greenhill*, 944 F.3d at 250. Then, "once the plaintiff makes the requisite initial showing, the burden shifts to the government to show that the prison policy is the least restrictive means of furthering a compelling governmental interest." *Id.*

Under both the First Amendment and RLUIPA,

---

[1] The *Turner* test asks:

> (1) whether there is a "valid, rational connection" between the prison regulation or action and the interest asserted by the government, or whether this interest is "so remote as to render the policy arbitrary or irrational"; (2) whether "alternative means of exercising the right ... remain open to prison inmates"; (3) what impact the desired accommodation would have on security staff, inmates, and the allocation of prison resources; and (4) whether there exist any "obvious, easy alternatives" to the challenged regulation or action.

*Wall v. Wade*, 741 F.3d 492, 499 (4th Cir. 2014) (citing *Lovelace*, 472 F.3d at 200).

> a "substantial burden" is one that "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs," . . . or one that forces a person to "choose between following the precepts of her religion and forfeiting [governmental] benefits, on the one hand, and abandoning the precepts of her religion . . . on the other hand."

*Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006) (quoting *Thomas v. Rev. Bd. Of Ind. Emp. Sec. Div.*, 450 U.S. 707 (1981)).

Here, Collins states that he is a Sunni Muslim, and at this stage of the proceedings, I will assume that he holds a sincere religious belief. He raises several issues related to his religious practice. First, he claims that he was denied a request to receive a sealed religious meal or Kosher diet; second, he claims that he was denied the opportunity to participate in Jum'ah on Fridays; and third, he claims that he has been denied his requests for religious materials, including a Kufi, a religious head covering, a Prayer Rug, Payer Oils, a Qur'an, and other unspecified religious materials. While his claim regarding receiving a religious meal plan may survive at this stage, I conclude that his claims for receiving religious materials and participation in Jum'ah on Fridays cannot.

Regarding his requests for religious materials, Collins has not set forth factual allegations that his religion was substantially burdened by the defendants' conduct. Rather, Collins admitted that the religious items he desires are available at the facility's commissary, although he cannot afford them. Indeed, "at a minimum the substantial burden test requires that a . . . plaintiff demonstrate that the government's

denial of a particular religious . . . observance was more than an inconvenience to one's religious practice." *Smith v. Allen*, 502 F.3d 1255, 1278 (11th Cir.2007) (citing *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir.2004)). No substantial burden occurs if the government action merely makes the "religious exercise more expensive or difficult," but fails to pressure the adherent to violate his or her religious beliefs or abandon one of the precepts of his religion. *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 739 (6th Cir.2007) (unpublished). Collins has failed to plead that his inability to purchase items from the commissary have required him to violate his religious beliefs or abandon the precepts of his religion.

He has, likewise, failed to plead that any denial of participation in Jum'ah on Fridays has substantially burdened his religious tenets. His claim in this regard simply states, "I have requested to participate in Jum'ah every Friday but denied me for this. It is something they do not offer Muslims." Compl. 5, Dkt. No. 1. Such a conclusory claim simply cannot survive 28 U.S.C. § 1915A scrutiny. *See Langford v. Joyner*, 62 F.4th 122, 124 (4th Cir. 2023) ("[T]he court need not accept . . . 'conclusory statements.'") (quoting Iqbal, 556 U.S. at 678)).

Furthermore, to the extent that Collins raises a claim under the Establishment Clause, such claim fails. The Establishment Clause states that "Congress shall make no law respecting an establishment of religion." U.S. Const. amend. I, cl. 1. The

Establishment Clause "'mandates government neutrality between religions and subjects any state-sponsored denominational preference to strict scrutiny.'" *Roberts*, 180 F.4th at 648 (quoting *Cath. Charities Bureau, Inc. v. Wisc. Lab. & Indus. Rev. Com'n*, 605 U.S. 238, 241 (2025)). Collins "'has the burden of proving a set of facts that would have historically been understood as an establishment of religion. That requires proving both a set of facts, like in all litigation, and proving that those facts align with a historically disfavored establishmentarian practice." *Id.* (quoting *Firewalker-Fields v. Lee*, 58 F.4th 104, 122 n.7 (4th Cir. 2023)). Here, Collins does not set forth factual allegations demonstrating any lack of neutrality between religions or a history of the facility's failure to accommodate a specific religious exercise. Rather, he concedes that there are religious accommodations for members of his religion by asserting that he personally has been denied access to them. Thus, as pled, Collins has failed to state an Establishments Clause claim.

Finally, Collins lists the Spending Clause as a constitutional right that has been violated. While RLUIPA has a "Spending Clause underpinning," there is a "'limitation on' the 'liability' the Spending Clause statutes may impose." *Landor*, 146 S.Ct. at 1941, 50 (quoting *Sossamon v. Texas*, 563 U.S. 277, 290 (2011)). Although a state agency "might be subject to certain private suits under RLUIPA for breaching its promises to the federal government," the only consequence for a

federal funding recipient's noncompliance is termination of funds. *Id.* at 1941, 43. Thus, Collins is not entitled to the relief he seeks under the Spending Clause.

Therefore, only Collins's claim that he was denied religious meals will go forward under the Free Exercise Clause and RLUIPA at this time. Because it is unclear at this juncture which defendants may have been involved with the implication of religious meal policies and practices that may have substantially burdened Collins's religious practice, all four will be served and directed to file a responsive pleading in regard to these remaining claims.

C. Motion for Issuance of Subpoenas.

Collins has submitted a subpoena form requesting production of his inmate file and the facility's policies, procedures, and regulations regarding indigent Muslim inmates and their requests for religious materials. The request has been docketed as a Motion for Issuance of Subpoenas but based on the information sought, I will construe it as seeking discovery, Dkt. No. 4. Given that Collins has failed to state a claim regarding the denial of his requests to receive religious materials, any policies on the matter are not proportional to the needs of this proceeding. *See* Fed. R. Civ. P. 26(b)(1) (limiting the scope of discovery to evidence that "is relevant to any party's claim or defense and proportional to the needs of the case"). Therefore, the Motion will be denied as moot.

III. Conclusion.

For the reasons stated, it is **ORDERED** as follows:

1. Only Collins's claims against the defendants under the First Amendment and RLUIPA will proceed at this time, and the relief available will be limited;
2. All other claims are DISMISSED without prejudice for failure to state a claim under 28 U.S.C. § 1915A(b)(1);
3. The Motion for Issuance of Subpoenas, Dkt. No. 4, is DENIED as moot;
4. The Clerk shall cause the defendants to be notified of this action under Rule 4 of the Federal Rules of Civil Procedure;
5. The court having previously assessed a filing fee in this case, and Collins thereafter returning an executed Inmate Consent to Withholding form, Collins is granted leave to proceed in forma pauperis to the extent Collins does not pay for service of process and may pay the filing fee via installments;
6. The Clerk is directed to forward a copy of Collins's signed consent to withholding form to the Trust Accounts Officer at Collins's current place of confinement;
7. The collection of the filing fee shall commence. The Trust Accounts Officer at Collins's current place of confinement, and at all subsequent

places of confinement, is hereby authorized to collect the fees as agreed to by Collins on the signed consent form, and to remit such fees in accordance with 28 U.S.C. § 1915(b). The Trust Accounts Officer at Collins's present institution is requested to place the signed consent to withholding form in Collins's file so that it might accompany the inmate in the event of his transfer. Should Collins be transferred to another institution, the balance due for the civil action will be inserted in Collins's file so that the appropriate officer at the next institution will remit the debt owed to the Clerk, U.S. District Court, 210 Franklin Road SW, Suite 540, Roanoke, Virginia 24011-2208. The Trust Accounts Officer is requested to reference the case number of this action on payments sent to the court;

8. Briefs, motions, and responses thereto shall be filed in compliance with the Federal Rules of Civil Procedure and the court's Local Rules;
9. Collins shall notify the court immediately upon his release or transfer and shall provide a new address. Failure to notify the court of such a change of address in writing will result in the dismissal of the case; and
10. All non-dispositive matters are referred to a United States Magistrate Judge.

ENTER: September 8, 2026

/s/ JAMES P. JONES
Senior United States District Judge